BEATTY, Justice.
This is an appeal from the denial of a petition which sought to remove an executor, or in the alternative, to revoke letters testamentary, and to appoint an administrator cum testamento annexo. We affirm.
The respondent, William Y. Neville, Jr., is a practicing lawyer in Eufaula. In 1974, he drafted a will for Cheryl Ann Marshall, then the wife of Grady A. Marshall, Sr. In that will the testatrix named her husband Grady as executor, and named the respondent as alternate executor.
In 1980, Cheryl and Grady Marshall obtained a divorce, an “answer and waiver” divorce. The respondent represented the husband in those proceedings. Subsequently, Cheryl filed a petition to modify the divorce decree’s provisions with regard to custody of one of the two children, the daughter Robin. In that subsequent proceeding, the respondent again represented Cheryl’s ex-husband, and Cheryl was represented by Russell Irby, another lawyer practicing in Eufaula. At that same time the respondent was also representing Cheryl’s mother, Mildred Mills, in a Social Security appeal. Ultimately, the custody contest was settled by agreement of the parties.
On May 22, 1982, Cheryl Ann Marshall was killed in an automobile accident in which a tractor-trailer struck a vehicle occupied by one Mark Frank, and then continued on to strike Cheryl’s automobile. Following her death, the respondent qualified as executor of Cheryl Ann Marshall’s estate on June 25, 1982, and probated her will. At or near this time, Mildred Mills was appointed guardian of Robin, the Mar-shalls’ daughter, while Grady A. Marshall, Sr., was appointed guardian of his son, Grady, Jr. After having been appointed executor of Cheryl’s estate, the respondent employed Russell Irby to assist him in prosecuting a wrongful death action on account of Cheryl’s death. Their agreement was one to share the workload and to petition the court to provide a fee of one-third (of any recovery) from the wrongful death claim, which fee would be shared equally. Irby did not wish to participate in the executorship but only in the death claim.
After this agreement between respondent and Irby was made, Mildred Mills, guardian of Robin, requested of respondent *937 that he remove himself as executor and as attorney in any wrongful death action. Mills had retained Bob Faulk as attorney to seek a recovery for Cheryl’s death. The respondent refused to remove himself, so Mrs. Mills, in her capacity as guardian of Robin, and Robin herself, filed a petition to have Neville removed as executor and to have Mrs. Mills appointed as administrator with the will annexed, alleging that his conduct had shown that he was not a suitable person to have charge and control of the estate.[1]
After a hearing, the trial court denied the petition, and the petitioners appealed.
The petitioners contend that Neville’s conduct places him within the terms of Code of 1975, § 43-2-290, because he has violated several Rules of Disciplinary Enforcement, thus disclosing his unsuitability as executor.
First, petitioners contend that Neville has violated DR 5-101(A), Code of Professional Responsibility of the Alabama State Bar, which provides:
“Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property or personal interest.”
Second, it is contended that he has violated DR 2-108(A):
“A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
“(1) the client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.”
And, third, petitioners contend that Ne-ville has violated DR 5-101(B), which states:
“A lawyer should not accept employment in contemplated or pending litigation if he knows or it is obvious that he ... ought to be called as a witness_”
On the first issue, the petitioners’ argument is that the respondent has a personal financial interest in the outcome of the wrongful death litigation, which is “the plum of the estate,” because without some recovery from that litigation the estate is insolvent. According to the petitioners, Neville would not only receive executor’s fees out of the estate but would also split a one-third contingency fee, and thus they contend that his interest as executor, to realize the maximum sum possible for the minor beneficiaries, and his personal interest in obtaining the highest possible attorney’s fee for himself, raise a conflict which should have been disclosed to his clients, the beneficiaries of Cheryl Ann Marshall, who are the real parties in interest.
Without reaching the question of whether or not the ultimate beneficiaries, the minor children, are Neville’s “clients” to whom he should have made any disclosure, this Court does not perceive a conflict of interest under these facts. Indeed, the fact that the executor-attorney “employs himself” has not been viewed as raising a conflict of interest. As early as 1846, in the case of Harris v. Martin, 9 Ala. 895, this Court, after discussing the practices in the English and American courts, stated that it could
“perceive no reason why one who is not a mere voluntary trustee, appointed by will or deed, and is also an attorney, shall not be allowed a reasonable compensation for his services in the latter capacity, when such has been necessarily and bona fide rendered for the benefit, or called into use by the necessities of the estate_” 9 Ala. at 900.
And, later, in Clark v. Knox, 70 Ala. 607 (1881), this Court recognized:
“When the executor ... is an attorney or solicitor, and in either capacity renders professional services, necessary in litigation for the benefit, or demanded by the *938 necessities of the estate, he is entitled to compensation for such services....” 70 Ala. at 617.
Even where legatees have themselves been represented by counsel, an executor also acting as attorney for the estate, and thus incidentally acting for the beneficiaries, nevertheless has been allowed to recover for his own services as an attorney, Alexander v. Bates, 127 Ala. 328, 28 So. 415 (1900); and the payment by an administrator-attorney of commissions to his law partner has been approved, this Court observing in Bendall’s Distributees v. Bendall’s Adm’r, 24 Ala. 295 (1854), at 305:
“We have already decided ... that allowances of this character may well be made to the administrator himself, if he be an attorney, and as such renders necessary legal services to the estate.... It would seem to follow from this, that there would be no impropriety whatever in the employment of the law partner of the administrator to render legal services for the estate, and in paying him a just and reasonable compensation for such services when rendered.” (Citation omitted.)
That statement focuses on the crux of the matter, i.e., no conflict of interest arises from the mere fact that the executor-lawyer himself provides legal services to the estate, and thus no reason exists for him to disclose anything to his clients, there being nothing to disclose. It follows that if the executor-lawyer can employ his own law partner, a fortiori, he can employ independent, unassociated counsel. Accordingly, this Court finds no breach of DR 5-101(A).
These cases, it appears, go far in resolving the second contention of the petitioners. However much the beneficiaries are interested parties in the outcome of the administration of the estate, and therefore in the ensuing litigation, it is the estate which is the client here, and it is the court which supervises and approves the allowances to the attorney for the estate. Code of 1975, §§ 43-2-682, -683; Annot., 18 A.L.R. 635. See also, John v. Sharpe, 148 Ala. 665, 41 So. 635 (1906) (lawyer-administrator employing associate lawyer entitled to reasonable value of services). Additionally, the evidence at the hearing below reveals that Neville had made it clear to Irby that any fee from the wrongful death case would have to be approved by the court, and that the court should appoint a guardian ad litem in determining such a fee. For these reasons, we are convinced that the respondent’s failure to consult with the minor beneficiaries here, if he did fail to do so, did not result in a violation of DR 2-108(A).
The petitioners also make much of the fact that Neville also represents the occupants of the other automobile which was struck by the same tractor-trailer that collided with the testatrix’s automobile. Ne-ville acknowledged this representation, but denied any conflict of interest. Moreover, at the hearing below, Neville insisted that those other people had information which would be beneficial to the estate’s case, and that he would recuse himself if any conflict should later arise. In addition, Neville offered to have the trial court set his fees not only as executor but also as attorney in this particular death claim as well.
Insofar as any consultation with the minors or their guardians might have been appropriate under DR 5-101(A), there is no evidence in the record that any such consultation had not been held, or any other evidence that Neville had acted in a manner which would have justified the drastic remedy of removal as executor under the statute. Cf. Castleberry v. Hollingsworth, 215 Ala. 445, 111 So. 35 (1927).
Finally, it is not clear under these facts that Neville, an executor, would be or even ought to be called as a witness in the wrongful death case, and thus it would not be improper for him to represent the estate in that litigation. We have been cited to no authority requiring such testimony. This Court does take note of DR 5-101(B)(l) and (2), which do not prohibit representation if proposed testimony would relate solely to an uncontested matter or merely to a matter of formality, and when there is no reason to believe that such testimony will be opposed by substantial evidence. In this *939 case, Neville, the executor, was not a witness to the accident and, for aught that appears in the record, can furnish no evidence concerning it.
This Court is not unmindful of the commendable zeal shown by the petitioners for the exercise of the proprieties on the part of lawyers who act as executors. We hold, however, that no improprieties of the kind alleged have been shown by the record before us. The court below found no conflict of interest nor any facts implying the unsuitability of the respondent to act in charge and control of the estate. That position, and the order pursuant thereto, must be affirmed. It is so ordered.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.

. Code of 1975, § 43-2-290, provides: “[A]n ... executor may be removed and his letters revoked ... when from his conduct or character there is reason to believe that he is not a suitable person to have the charge and control of the estate.”