MOORE, Chief Justice
(dissenting).
I agree with the appellant Ralph Richards (“Ralph”) that his application for letters of administration naming him personal representative of. the estate of his mother, Mary Richards, relates back to his timely filing of a wrongful-death action on her behalf. I therefore respectfully dissent from the majority’s affirmance of the summary judgment entered for Baptist Health System, Inc., d/b/a/ Walker Baptist Medical Center (“Baptist Health”).

I. Factual Background

The facts in this case are undisputed. Mary Richards died on September 24, 2007.[1] Her son, Ralph, filed a wrongful-death complaint on her behalf on September 23, 2009, one day before the two-year statute of limitations for a wrongful-death action expired. See § 6 — 5—410(d), Aa. Code 1975. The caption of the complaint describes the plaintiff as “Ralph Richards as Personal Representative of Mary Richards, deceased.” Aabama law provides that “[a] personal representative may commence an action” based on an alleged *180 wrongful death. § 6-5-410(a), ' Ala.Code 1975. Although the caption of the timely filed complaint identifies Ralph as Mary’s personal representative, Ralph did not apply for letters of administration' for his mother’s estate until July 12, 2010, over nine months after the expiration of the two-year limitations period for filing the wrongful-death action. The Walker Probate Court issued" the letters of administration on August 3, 2010.
Baptist Health filed its answer on October 15, 2009, and moved for a summary judgment on March 18, 2014, arguing that Ralph’s formal appointment as personal representative after the expiration of the statutory limitations period did not relate back to the timely filing .of the wrongful-death . action. In the trial court Baptist Health relied on Downtown Nursing Home, Inc. v. Pool, 375 So.2d 465 (Ala. 1979), which cited Strickland v. Mobile Towing & Wrecking Co., 293 Ala. 348, 303 So.2d 98 (1974), for the holding that “any action by the administrator'occurring prior to his appointment was a nullity and therefore there was nothing to which an amendment could relate back.” 375 So.2d at 466. On June 6, 2014, the trial court entered a summary judgment for Baptist Health.

II. Standard of Review

“Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review.” Continental Nat'l Indem. Co. v. Fields, 926 So.2d 1033, 1035 (Ala.2005).

III. Analysis

A. Relation Back
In Ogle v. Gordon, 706 So.2d 707. (Ala. 1997), this Court overruled Strickland v. Mobile Towing & Wrecking Co., supra, the case upon which Pool had relied. See Pool, 375 So.2d at 466. Ogle held that the issuance of letters of administration related back to the time the petition for letters for administration was filed, which in that case was prior to the expiration of the statutory limitations period for a wrongful-death action. Because Ralph did not petition for letters of administration until after the two-year limitations period for a wrongful-death action expired, this case is distinguishable from Ogle on its facts.
Ogle, however, made the larger point that historically letters of administration relate back to the time of death “ ‘ “and validate the acts of the representative done in the interim.” ’ ” 706 So.2d at 709 (quoting McAleer v. Cawthon, 215 Ala. 674, 676, 112 So. 251, 253 (1927), quoting in turn 23 C.J. 1180, § 400). This Court described that principle as “a rule of practically universal recognition.” Ogle, 706 So.2d at 709 (quoting McAleer, 215 Ala. at 675, 112 So. at 253). See Nance v. Gray, 143 Ala. 234, 241, 38 So. 916, 918 (1905) (holding that letters testamentary “related back, and validated [prior] acts as executor”). Ogle also quoted a Florida Supreme Court case for the proposition that “ ‘where a wrongful death action was instituted by a party “as administrator,” his subsequent appointment as such validated the proceeding on the theory of relation back.’ ” Ogle, 706 So.2d at 709 (quoting Griffin v. Workman, 73 So.2d 844, 846 (Fla.1954)). That proposition describes the facts of this case: Ralph instituted the wrongful-death action “as Personal Representative of Mary Richards,” and he was subsequently formally appointed to that position. See Wood v. Wayman, 47 So.3d 1212, 1221 (Ala.2010) (Murdock, J., dissenting) (noting the majority’s “failure to apply the well settled rule concerning the relation back of a personal representative’s authority to the date of the decedent’s death”).
*181 Under this ancient doctrine,[2] whether Ralph filed his petition for letters of administration before or after the expiration of the statutory wrongful-death limitations period is immaterial. The issuance of the letters testamentary validated his acts as administrator from the time of Mary’s death. This result is in harmony with § 43-2-831, Ala.Code 1975, which states that “[t]he powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter.” In Ogle, this Court cited § 43-2-831 as a codification of the doctrine of relation back as applied to a personal representative. 706 So.2d at 710. In Wayman, the majority reasoned that § 43-2-831 applied only to actions “beneficial to the estate” and that a wrongful-death action by contrast benefited the next of kin and not the estate' per se. 47 So.3d at 1217. , However, a case quoted in Ogle sensibly states: “We think it idle to urge that the rule cannot apply in this case because the proceeds of any judgment obtained would go to next of kin only, and not in the usual course of administration. There is no valid reason for sustaining the rule in one case and disregarding it in the other.” Archdeacon v. Cincinnati Gas & Elec. Co., 76 Ohio St. 97, 107, 81 N.E. 152, 154 (1907).
Ralph argues that we should follow our more recent case on this matter, Ex parte Tyson Foods, Inc. 146 So.3d 1041 (Ala. 2013), in which we applied the relation-back doctrine of Rule 17, Ala. R. Civ. P.j to cure a capacity defect in a wrongful-death action. That rule provides:
“No action shall be dismissed on the ground that it is not prosecuted in the, name of the real party in interest until a reasonable time has been allowed, after objection for ratification of. commencement of the action by,- or joinder or substitution of, the real party in interest; and such ratification, joinder, or.,substitution shall.have the same effect as if the action had been commenced in the name of the real party in interest.”
Rule 17(a), Ala. R. Civ. P. Ralph, in his capacity as Mary’s personal'representative, is the real'party in interest in this wrongful-death case. He shed as such. However, his status was imperfect because he lacked formal appointment. In Ogle, this .Court stated that “ ‘ “the party plaintiff, though lame in one particular, might be allowed to cure that defect and proceed to a determination of the merits.”’” 706 So.2d at 709 (quoting Griffin v. Workman, 73 So.2d at 846, quoting in turn Archdeacon, 76 Ohio St. at 107, 81 N.E. at 154).
Because Ralph, the real party in interest, has cured the defect and because that cure, as explained above, relates back to the time of Mary’s death, he is entitled to “proceed to a determination of the merits.” See Tyson, 146 So.3d at 1046 (noting that “the goal of relation-back principles is ‘to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense’” (quoting Advisory Committee Note to Rule 15, Fed. R.Civ.P.)). In this case, where the plaintiff who timely filed and the plaintiff who later qualified are one and the same, the defendant has suffered no prejudice. In-Tyson, speaking’of the addition of a party *182 under Rule 17(a) after the expiration of the limitations period, we stated;
“ ‘ “As long as defendant is fully apprised of the claim arising from specified conduct and has fully prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense.” ’ ”
146 So.3d at 1045 (quoting Board of Water & Sewer Comm’rs of the City of Mobile v. McDonald, 56 Ala.App. 426, 430, 322 So.2d 717, 721 (Civ.App.1975), quoting in turn 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1501 (emphasis added)).
The same rule should logically apply where the plaintiff remains the same and subsequently satisfies the requisite formalities. “[I]t is usually held that an amendment changing capacity in which a plaintiff sues does not change the cause of action so as to let in the defense of limitations.” Annotation, Amendment of Pleadings after Limitation has Run by Change in Capacity in which Suit is Prosecuted, 74 A.L.R. 1269, 1270 (1931). See also Baltimore & Ohio Sw. R.R. v. Carroll, 280 U.S. 491, 494, 50 S.Ct. 182, 74 L.Ed. 566 (1930) (noting that “an amendment for the first time setting up the right of the plaintiff to sue as personal representative” did not introduce a new cause of action, “and therefore it related back to the beginning of the action” (quoted in Ex parte Godfrey, 275 Ala. 668, 674, 158 So.2d 107, 113 (1963))); New York Central & Hudson River R.R. v. Kinney, 260 U.S. 340, 346, 43 S.Ct. 122, 67 L.Ed. 294 (1922) (holding that “when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist”); Missouri, Kansas & Texas Ry. v. Wulf, 226 U.S. 570, 576, 33 S.Ct. 135, 57 L.Ed. 355 (1913) (holding that “an amendment that, without in any way modifying or enlarging the facts upon which the action was based, in effect merely indicated the capacity in which the plaintiff was to prosecute the action” was a change “in form rather than in substance.... [Therefore it related back to the beginning of the suit”); and Deupree v. Levinson, 186 F.2d 297, 301 (6th Cir.1950) (applying Wulf and noting that “[a]lso in the instant case there is no change in the party bringing the action, but simply an amendment to his capacity”).
B. Capacity and Waiver
Had an objection to Ralph’s qualification been raised in Baptist Health’s answer of October 15, 2009, the defect in Ralph’s status could have been cured at the outset of the case. Although Ralph fully qualified as the personal representative of his mother’s estate on August 3, 2010, when the probate court issued letters of administration and approved his bond, Baptist Health nonetheless did not raise the issue of his qualification as personal representative until the filing of its summary-judgment motion on March 18, 2014, over four years after Ralph filed his complaint. Rule 9(a), Ala. R. Civ. P., states:
“When a party desires to raise an issue as to ... the authority of a party to sue or be sued in a representative capacity, the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader’s knowledge.”
(Emphasis added.)
In its answer, the closest Baptist Health comes to satisfying Rule 9(a) is its “Third Defense,” which states: “Defendant denies the material averments of the complaint and demands strict proof thereof.” Such a *183 general statement is inadequate to preserve an objection to capacity. “It has long been held in Alabama that lack of capacity cannot be raised under a general denial ... and this will continue to be true under the rule, which requires a ‘specific negative averment.’” Committee Comments on 1973 Adoption of Rule 9, Ala. R. Civ. P.
“[Ujnder Alabama law an administrator or personal representative is not required to prove his capacity as such before bringing a wrongful death action, so long as the administrator alleges in the complaint that he is the proper party to bring the action and the defendant does not specifically deny his capacity. Even before the adoption of the [Alabama Rules of Civil Procedure], the law in this state was that proof of capacity was not required until capacity was challenged and that a plea to the merits which did not challenge capacity waived that defense."
Alabama Power Co. v. White, 377 So.2d 930, 933 (Ala.1979) (emphasis added). Further, “by pleading the general issue, the defendant admitted the capacity and title stated in the complaint.” Id. (quoting Louisville & Nashville R.R. v. Trammell, 93 Ala. 350, 353, 9 So. 870, 872 (1890) (emphasis added)). Additionally, “ ‘[wjhen the general issue is pleaded in an action of this sort, ... and there is no special plea denying the existence of the representative capacity, in which the plaintiff sues, NO ISSUE IS THEREBY MADE REQUIRING PROOF OF THAT RELATION.’” Alabama Power Co., 377 So.2d at 934 (quoting Dobson v. Neighbors, 228 Ala. 407, 408, 153 So. 861, 861 (1934) (capitalization in original)).

TV. Conclusion

For the above reasons I would reverse the summary judgment for Baptist Health. Ralph’s status as Mary Richards’s personal representative was averred in the complaint and was not specifically denied by Baptist Health in its answer. Furthermore, under well settled doctrine that has been acknowledged for centuries, Ralph’s appointment as personal representative related back to Mary’s death.

. The complaint alleges that Mary Richards “became choked on food and strangled to death” while she was a patient at Walker Baptist Medical Center.

. "The doctrine that whenever letters of administration or testamentary are granted they relate back to the intestate’s or testator’s death is an ancient one. It is fully 500 years old.” J.B.G., Annotation, Relation Back of Letters Testamentary or of Administration, 26 A.L.R. 1359, 1360 (1923) (cited in Ogle, 706 So.2d at 709 n. 1).